HERMANN MILLER, Respondent, v. ANTON WAGENHAUSER, Appellant.

### St. Louis Court of Appeals, May 19, 1885.

CONTRACTS—INTERPRETATION.—General terms employed in an instrument of writing are limited by special recitals used in the same connection.

APPEAL from the St. Louis Circuit Court.—LUBKE, J.

*Affirmed.*

LOUIS GOTTSCHALK, for the appellant.

LEO RASSIEUR and D. TIFFANY, for the respondent.

LEWIS, P. J., delivered the opinion of the court.

When a partner purchases the interest of his co-partner, if this expresses the whole transaction, it follows of course that the purchaser assumes the liabilities of the concern, since he gets only the net share of

his vendor after all joint liabilities are discharged. But
if the agreement goes further, and expressly stipulates
that the purchasing partner is to pay certain debts speci-
fically described, this may reasonably be held to imply,
without some overruling element, that, even as between
themselves, other debts and liabilities remain a charge
against both. This follows the well worn maxim, *ex-
pressio unius est exclusio alterius*. So much, and no
more, is taught by the authorities cited for the defend-
ant, to show that the naked fact of the plaintiff's pur-
chase of the defendant's interest in the partnership con-
cern, obliged him to pay all the joint liabilities, without
exception.

These litigants were equal partners in a brewing and
malting business, and, on February 23, 1884, the plain-
tiff bought out the defendant's interest. A suit was
pending in the U. S. circuit court in favor of F. An-
scheutz, and against the firm, for damages in the breach
of their contract for the purchase of ice. This suit ended
in a judgment for the plaintiff, after the dissolution of
the firm. The present plaintiff, having paid the sum of
$1,643.58 in satisfaction of that judgment, instituted this
proceeding to compel a contribution of one half from the
defendant.

The petition fully sets forth the rendition of the
judgment against the plaintiff and defendant, and alleges
that the plaintiff was required to pay it, and did pay it.
This shows, *prima facie*, a joint liability, and though
the petition is inartificially drawn, enough appears to
show a cause of action. There is no reference to the ex-
istence of a partnership relation at any time, and there-
fore no need of any statement about the terms of disso-
lution, or the consequent obligation of either party
touching the firm liabilities. The objection of insuffi-
ciency in the petition is not well taken. The controlling
question in the controversy is as to the proper interpre
tation of the agreement for dissolution, which is in the
following words: "Whereas Anton Wagenhauser has
this day sold and transferred unto Hermann Miller, all

his right, title and interest in and to the property, assets and business of the firm of Miller & Wagenhauser, which firm has heretofore been engaged in the malting and brewing business in the city of St. Louis, and by mutual consent this day has been dissolved, and whereas said Hermann Miller has assumed all debts and liabilities of the said firm, now, therefore, in consideration of the premises and of the sum of one dollar paid, the said Hermann Miller hereby covenants and agrees to and with said Anton Wagenhauser that he will pay and discharge all debts of said firm, as per the books thereof, and, also the rental of a certain lease made by Albert Todd to said Miller & Wagenhauser as reserved in said lease two lots 48 4-12 feet front and 19 4-12 feet front by a depth eastwardly in block 52, dated September 1st, 1882. Also, to assume the payment of a certain note made by them to Charles T. Behrens for $5,890.00, dated January 23, 1882, and secured by deed of trust, recorded in Book 672, page 104, of the Recorder's office of the city of St. Louis.

"In witness whereof I have hereunto set my hand, this 23rd day of February, 1884.

"HERMANN MILLER. [SEAL.]
"Witness: BENJ. A. SUPPAN."

It is contended for the defendant, that the recital, "whereas said Hermann Miller has assumed all debts and liabilities of the said firm," shows the intention of the parties to have been that the plaintiff was to discharge all liabilities of the concern, whether liquidated or unliquidated, whether matured or unmatured, and whether they appear upon the books or not. It is further insisted that the subsequent provisions of the contract do not limit this general undertaking, but must be construed as only particularizing some of the subjects already included in the general description. We are unable to harmonize these positions with well known rules of interpretation. It must be observed, in the first place, that the expression in general terms is only a preliminary recital, while the words of direct undertaking are reserved for another

place in the instrument. Recitals may be resorted to for the purpose of explaining the subject matter of the contract and the general intentions of the parties with reference thereto; but not for the purpose of enlarging a specific undertaking within the scope of the general intentions, or of the subject matter. Thus, a legislative enactment recited in its preamble certain inconveniences existing in a part of the town of Covington, with the remedy to be applied to them, to-wit: "an alteration in that part of said town," etc. The enacting provision authorized "any alteration in the streets, alleys, or lots of said town, as may be agreed upon," etc. It was claimed that the general terms of the preamble subjected the "commons" within the designated territory to the power of alteration, in conformity with the act. But this was denied, because the granting, or operative words of the act, were confined to the streets, alleys and lots. *Covington v. McNickle*, 18 B. Mon. 262. But the rule of interpretation is not limited to preambles or recitals. It is broadly laid down in *Torrance v. McDougald*, (12 Ga. 526), that "the rule of construction applicable to all writings, constitutions, statutes, contracts, and charters, public, or private, and even to ordinary conversations, is this: that general and unlimited terms are restrained and limited by particular recitals, when used in connection with them." A striking illustration of the rule, and very pertinent to the present case, is found in *Hare v. Horton*, (5 B. & Ad. 715), where there was a mortgage of dwelling-houses, foundries, and other premises, "together with all grates, boilers, bells, and other fixtures in and about the said two dwelling-houses and the brew-houses thereunto belonging." It was held that, although without these words, the fixtures in the foundries would have passed, yet the effect of their introduction was to confine the fixtures conveyed to those in the dwelling-houses and brew-houses. Many other authorities might be cited to the like effect, but these sufficiently exemplify the general rule.

The direct undertaking in the present contract par-

ticularizes the liabilities, or classes of liabilities, which the purchasing partner is to pay. Aside from those which are severally described, he is to pay what may be called the book debts of the concern, of which the Anschuetz judgment is not one. The whole argument admits, in effect, that this judgment is not one of the debts or liabilities described in this part of the writing. We see no escape from the conclusion, therefore, that it was not, on the face of the agreement, one which the plaintiff agreed to pay. The general terms of the preamble are restricted by the words of particular description which follow, when it comes to the undertaking itself.

There was testimony to the effect that the instrument was written by the defendant's attorney without the words "as per the books thereof," and that these words were inserted by the plaintiff's attorney, before the signing. That, when the defendant's attorney asked for an explanation of this addition, he was answered that it was made "because, of course, Miller was not willing to assume any suit for damages for personal injuries; that some party might claim that he had been injured while in the employ of the partnership, and bring a suit for damages," etc. That, upon this explanation, the defendant's attorney accepted the writing. It is argued, hence, that the plaintiff, having given his construction of the words, "as per the books," prior to the defendant's acceptance of the obligation, "can not substitute another one now. It would be a fraud, and plaintiff is estopped." This amounts to saying that, if a contracting party once assigns a reason for desiring a certain stipulation, he can not afterwards be heard to assign an additional reason for the same, or to claim according to its general meaning and effect. More than this: It assumes that, since it is proved that the plaintiff averred his understanding that the limitation within the class of book debts would exclude suits for personal damages, therefore, it must be agreed on all hands that the Anscheutz judgment, although also not a book debt, must yet be here treated as if it were one, and be included

within the same class limitation; or else, that the limitation itself, except as to personal damage claims, must be considered a nullity. The proposition suggests an extreme case of employing parol evidence, not merely to modify the effect of an agreement in writing, but to reverse the plain meaning of its terms. Neither reason nor authority can be found to sustain any such process. We are of opinion that the judgment below was rightly given for the plaintiff, and therefore affirm it. All the judges concur.