Walter L. PAULUS, Surviving Partner Doing Business as Robert Paulus Construction Company, (Plaintiff) Appellant,

v.

BOARD OF EDUCATION OF the CITY OF ST. LOUIS, a Corporation, (Defendant) Respondent.

No. 30772.

St. Louis Court of Appeals.

Missouri.

June 13, 1961.

Edward C. Schneider, Harry A. Frank, St. Louis, for appellant.

John M. Hadley, Lyng, MacLeod, Abels & Lyng, Leo Lyng, St. Louis, for respondent.

RUDDY, Judge.

This is an action for a declaratory judgment wherein the survivor of a partnership doing business as Robert Paulus Construction Company prays for a declaration of the duties and rights of the plaintiff and defendant, the Board of Education of the City of St. Louis, under certain provisions of a contract for the building of a school.

The original plaintiffs were Robert Paulus and Walter L. Paulus, doing business as Robert Paulus Construction Company. Since the filing of this action Robert Paulus has died and the cause is now prosecuted in the name of the surviving partner. We shall refer to him as plaintiff.

The defendant requested and advertised for proposals and bids for the erection and construction of a school building known as the Peabody Elementary School. Plaintiff submitted to the defendant on its Official Bid-Form a bid and proposal, wherein he proposed to erect said school building, according to defendant's plans and specifications, for a base bid of $834,000, plus a proposal to do additional work for $64,400, making a total bid price of $898,400. The bid and proposal contained further provisions as to prices to be charged in the event extra work on certain specified items was required on the project. Plaintiff's proposal was accepted by defendant. A bond and contract were executed

by the parties and the building as proposed was erected by plaintiff. Thereafter, a dispute arose between plaintiff and defendant as to the interpretation of certain words and figures contained in the Official Bid Blank involving the amount due for additional work of piling in place. The Official Bid-Form, containing the words and figures which form the basis of the dispute, is as follows:

REVISED 1–25–56          **OFFICIAL BID BLANK**          February 7, 1956

LETTING NO. 6302 — GENERAL WORK — ELEMENTARY SCHOOL, 1424 SOUTH 14TH ST., ST. LOUIS, MISSOURI

(HOUSING AREA M–1–7)

BOARD OF EDUCATION OF THE CITY OF ST. LOUIS — V. HARRY RHODES, COMMISSIONER OF SCHOOL BUILDINGS

THE UNDERSIGNED PROPOSES AND AGREES TO FURNISH ALL LABOR AND MATERIALS NECESSARY TO COMPLETE THE WORK WITHIN 540 CALENDAR DAYS FROM THE BOARD MEETING OF FEBRUARY 14, 1956 ACCORDING TO THE PLANS, SPECIFICATIONS, AND ADDENDA, IF ANY, PREPARED FOR LETTING NO. 6302 FOR THE SUM OF ........................................................................................$ 834,000.00

BASE BID

NOTE: THE UNDERSIGNED MUST FILL IN ALL BLANK SPACES, WHEREVER THEY OCCUR, INCLUDING ALL UNIT PRICES AND THE EXTENDED AMOUNTS WHERE SPECIFIC QUANTITIES ARE CALLED FOR, TO INDICATE THE PRICE HE AGREES TO ACCEPT FROM THE "BOARD" FOR ADDITIONAL WORK, UNDER THIS CONTRACT.

UNIT PRICES: THE UNDERSIGNED AGREES THAT ADDITIONAL WORK SHALL BE COMPUTED AT THE FOLLOWING UNIT PRICES, AND THAT WORK OMITTED SHALL BE COMPUTED AT 75 PER CENT LESS THAN THESE PRICES. EXTENDED PRICE AMOUNTS FOR VARIOUS TYPES OF EXCAVATION ARE CALLED FOR BELOW. THESE AMOUNTS SHALL BE TOTALED AND THAT TOTAL SHALL BE ADDED TO THE BASE BID AND THE RESULTING SUM SHALL BECOME THE TOTAL BID OF THE UNDERSIGNED. AT THE COMPLETION OF THE WORK THE UNUSED PORTION OF MONEY INDICATED IN THE COLUMN FOR FIFTY (50) CU. YDS. OF ADDITIONAL EXCAVATION THAT IS NOT REQUIRED TO COMPLETE THE WORK UNDER THIS LETTING SHALL BE RETURNED BY THE UNDERSIGNED TO THE "BOARD". EXCAVATION IN EXCESS OF 50 CU. YDS. WILL BE PAID FOR ON CU. YD. UNIT PRICES BELOW.

| (A–1) PRICE FOR PILE IN PLACE | ESTIMATED QUANTITY | UNIT PRICE | EXTENDED AMOUNT |
|---|---|---|---|
| PILE IN PLACE | 12,000 LIN. FT. | $ 5.00 | $ 60,000.00 |
| (A) PRICE PER CUBIC YARD FOR ADDITIONAL ROCK EXCAVATION: | | | |
| CLASS "C" | FIFTY (50) CU. YDS. | $ 50.00 | $ 2500.00 |
| CLASS "B" | FIFTY (50) CU. YDS. | $ 12.00 | $ 600.00 |
| (B) PRICE PER CUBIC YARD FOR ADDITIONAL EARTH EXCAVATION: (CLASS "A") | | | |
| 1. PER CU. YD. FOR 1ST 3 FT. EXTRA DEPTH BY HAND | (50) CU. YDS. | $ 9.00 | $ 450.00 |
| 2. PER CU. YD. FOR 1ST 3 FT. EXTRA DEPTH BY MACHINE | (50) CU. YDS. | $ 3.00 | $ 150.00 |
| 3. PER CU. YD. FOR 2ND 3 FT. EXTRA DEPTH BY HAND | (50) CU. YDS. | $ 10.00 | $ 500.00 |
| 4. PER CU. YD. FOR 2ND 3 FT. EXTRA DEPTH BY MACHINE | (50) CU. YDS. | $ 4.00 | $ 200.00 |
| PILING AND TOTAL AMOUNT ADDITIONAL EXCAVATION AS ABOVE | | | $ 64,400.00 |
| (BASE BID PLUS TOTAL AMOUNT AS ABOVE) ......... TOTAL BID PRICE | | | $ 898,400.00 |

IF EXTRA WORK ON ITEMS C (1 TO 4 INCL.), D (1 TO 5 INCL.), E, F, G, AND H IS REQUIRED ON THIS PROJECT, IT WILL BE FURNISHED AT THE FOLLOWING PRICES:

AWARD SHALL BE MADE ON TOTAL BID PRICE

(C)
1. PRICE OF PILING IN PLACE — PER LINEAL FOOT ..................... $ 6.00
2. PRE-EXCAVATION — PER PILE ............................. $ 100 00
3. TEST HOLE BORINGS — PER LINEAL FOOT ..................... $ 6.00
4. LOAD TEST — EACH ................................. $ 2000.00

(D) PRICE PER CUBIC YARD FOR ADDITIONAL FILL IN PLACE:
1. PER CU. YD. FOR MOLDING SAND ........................................ $ 5.00
2. PER CU. YD. FOR CLEAN EARTH FILL ................................... $ 5.00
3. PER CU. YD. FOR CRUSHED STONE ..................................... $ 5.00
4. PER CU. YD. FOR GRAVEL ............................................ $ 5.00

The plans and specifications were prepared by defendant and plaintiff's bid and proposal to erect the school building were in accordance with said plans and specifications and the bid-form. The "Estimated Quantity" of 12,000 lineal feet of "Pile in Place" was placed in the bid-form by the defendant. These pilings were driven into

the ground by means of a mechanical device until a "point of refusal" was reached (a point where the piling could not be driven any farther into the ground by the force of the pile driving hammer). A determination as to when the point of refusal was reached was made by a representative of the defendant. 9,732 lineal feet and 8 inches of piling were placed in the ground. The difference between the piling placed in the ground and the Estimated Quantity shown in the bid-form was 2,267 feet 4 inches, which represented the "omitted" or unused lineal feet of piling in place.

After the work was completed plaintiff rendered a statement to the defendant wherein he showed the contract price as $60,000 (Extended Amount) and deducted therefrom as a credit the omitted footage which he computed at $1.25 per lineal foot for a total credit of $2,834.17, leaving a balance due of $57,165.83. Defendant paid plaintiff the sum of $48,663.34 for piling in place, which it contended was the agreed unit price of $5 per lineal foot for 9,732 feet 8 inches of piling actually driven. This left a balance due plaintiff, according to his calculation, of $8,502.49. Later, defendant issued its "Change Order" wherein it agreed to pay $2,834.17 for the omitted lineal footage of the "Pile in Place." Plaintiff declined to accept this amount in payment of this item. In arriving at this figure of $2,834.17 defendant computed the unused footage at $1.25 per lineal foot and contended that this sum was all it owed for the omitted piling in place according to the terms of the Official Bid-Form. Defendant offered to have judgment entered against it for $2,834.17.

Robert J. Paulus testified that the piling work called for in the bid was given to the Raymond Concrete Piling Company under a subcontract because the specifications called for Raymond Concrete Piling. The witness said that plaintiff paid the Raymond Concrete Piling Company on the same basis as plaintiff computed defendant's bill. This witness admitted it was impossible

for defendant "to foresee how much piling would have to be driven." In this connection he further said, "that is the reason for the Board making an estimate of a certain number of lineal footage of piling, because at any time you go below the ground, you can't foresee whether you are going to have more or less. It is impossible." Witness also said the circumstances are such that no one can tell what is underneath the ground and that 12,000 lineal feet of piling may have to be driven into the ground or only 6,000 lineal feet, and for this reason the term "estimated" is used in the bid-form.

Paul Carl, an employee of defendant, testified that prior to estimating the quantity of piling in place that may be needed, preliminary test borings of the soil and rock strata were made to determine the type of footings and foundations to be used in constructing the building. The result of the tests determined the estimated quantity mentioned in the bid-form.

Plaintiff contends that the plain meaning of the language in the "Official Bid-Form," pertinent to the item "Piling in Place," was that defendant would pay $60,000 the "Extended Amount" shown for "Piling in Place" and against this sum a credit or deduction was to be given for the unused or omitted piling to be computed on the basis of 75% less than the unit price, or $1.25 per lineal foot. Put another way, plaintiff claims he is entitled to $5 per lineal foot for 9,732 feet 8 inches of piling actually driven into the ground and $3.75 per lineal foot for the unused piling in place.

Opposed to plaintiff's contention is that of defendant wherein it urges the interpretation that the bid-form specifically states that the plaintiff was to receive $5 per lineal foot for piling actually driven into the ground and $1.25 per lineal foot for all piling omitted under the "Estimated Quantity" of "12,000 Lin. Ft."

The trial court in its decree declared and adjudged "That the 'Bid Blank' herein

concerned provided that for an 'Estimated Quantity' of 12,000 lineal feet of piling 'in place' Plaintiffs were to be paid at a unit price of $5.00 per lineal foot actually driven and 'in place,' and that for 'omitted work,' that is, piling not driven, Plaintiffs were to be paid by Defendant at 75% less, or at the rate of $1.25 per lineal foot."

It was further adjudged by the court that defendant was indebted to the plaintiffs (now only the surviving plaintiff) in the amount of $2,834.17 plus interest.

■ Plaintiff urges the application of the rule that the entire contract should be considered, as well as the situation of the parties, the subject matter of the contract, the facts and circumstances attending the execution thereof, and the apparent purpose which the parties were undertaking to accomplish, in interpreting and construing the language involved. Tamko Asphalt Products, Inc. v. Fenix, Mo.App., 321 S. W.2d 527, loc. cit. 532; Katz Drug Co. v. Kansas City Power & Light Co., Mo.App., 303 S.W.2d 672, loc. cit. 680. No one disputes the applicability of this cardinal rule when construing the meaning of written contracts.

Plaintiff also urges, in support of his interpretation of the language in question, that it is "open to two interpretations, and that the construction must be adopted which is most strongly against the party who prepared the contract and most strongly in favor of the contractor who merely signed it." Katz Drug Co. v. Kansas City Power & Light Co., supra.

■ If the language in question was susceptible of two interpretations, the rule urged by plaintiff would be applicable. However, we feel that the language used in the "Official Bid-Form" is clear and is not subject to any other meaning than that found by the trial court. When the language of a contract is plain, there can be no construction because there is nothing to construe. Mickelberry's Food Products Co. v. Haeussermann, Mo., 247 S.W.2d 731.

■ Plaintiff advances many explanations in support of his interpretation, but one seems to epitomize all of them when he states that the defendant expected to be charged $60,000 for the Pile in Place work not included in the Base Bid and that said defendant expected a credit or adjustment for the omitted Pile in Place, to be deducted from the $60,000, and that the credit was to be computed at 75% less than the unit price. The fallacy of this reasoning is two-fold. First, there is nothing in the bid to indicate that the defendant expected to be charged $60,000 if less than 12,000 lineal feet of pile in place were driven into the ground. This was the Extended Amount to be paid if 12,000 lineal feet had been driven into the ground. This amount was merely the extension of the unit price agreed on multiplied by the estimated lineal feet needed. In connection with the omitted pile in place, nowhere do we find the words "credit" or "adjustment." What we do find is that the omitted work, or the piling not put in place, was to be paid for at a rate of 75% less than the unit price of $5 per lineal foot, namely $1.25, and the piling actually placed in the ground was to be paid for at the rate of $5 per lineal foot. This contract is not subject to any other interpretation. No place in the paragraph of the Official Bid-Form devoted to the "Unit Prices" to be charged does it mention that the omitted work was to be credited at the rate indicated in said paragraph. It clearly defines the price to be paid by defendant for the work actually done within the "Estimated Quantity" and the price to be paid for that which was omitted and not required to be done. Plaintiff does not dispute the meaning of the term "work omitted." Applied to the item "Pile in Place" he agrees the term means piling not placed.

It must be remembered that the language under scrutiny covers additional work and does not cover work to be performed under the Base Bid. If the defendant expected to be charged $60,000 for the piling in place, as plaintiff contends, what need was

there for the paragraph that is headed "Unit Prices?" This paragraph was intended to fix the price to be charged per unit for work actually done and work that was not needed, described in said paragraph as "work omitted." This paragraph precedes the extended amount based on the estimated quantity and controls the price defendant was to be charged.

Plaintiff charges that the trial court erred in the construction it placed on the words "Estimated Quantity." The trial court in a memorandum opinion stated that, "The use of the word 'estimated' means that the parties were making their best prediction as to what would be required. They were dealing with a portion of the work which would be below ground. They could not know exactly or accurately the quantity of rock excavation, the quantity of earth excavation, or the quantity of piling in place. It was natural and logical that they should make their best predictions. It is to be noted that the possibility was recognized that the estimate would be too *low*, as well as that the estimate might be too *high*. If the estimate were low and extra piling was required, it would be paid for at a higher price, at $6 per lineal foot. If some of the estimated piling did not have to be used and would be omitted from use, it should be paid for at $1.25 per foot." Plaintiff's brother and former partner testified that it was impossible to foresee how much piling would have to be driven and for this reason an estimate is used in the bid form. Applying the rule urged by plaintiff that in interpreting and construing the language in question, consideration must be given to the purpose which the parties were undertaking to accomplish, to the aforementioned testimony of Robert J. Paulus, it becomes evident that the trial court's construction of the words "Estimated Quantity" is correct.

We have examined the cases cited by plaintiff wherein the courts judicially construed the meaning of the terms "estimate" and "estimated quantity" and find them of no value in the instant case. In the cases cited the estimates of the items and matter involved were capable of greater certainty than the needed piling to be driven, called for in the instant case. As we have pointed out plaintiff's deceased brother said it was impossible to estimate the needed piling in place. Frankly, the controversy in this case is not about the meaning of the term "Estimated Quantity," but concerns merely the method to be followed in computing the price of work omitted. That part of the "Estimated Quantity" of piling that was placed was to be computed at one price and that omitted was to be computed at another price, namely, 75% less than the price charged for completed work.

The trial court also stated in its memorandum opinion that the estimate of 12,000 lineal feet was included in the contract for the purpose of determining at what point the price would be increased from $5 per lineal foot to $6 per lineal foot. An examination of paragraphs (B) and (C) of the Official Bid Blank reveals that if extra piling in place, in excess of that estimated under paragraph (A–1), is needed, it will be furnished at a price of $6 per lineal foot. This was a clear recognition in the bid that the estimate may be too low as well as too high and that the estimated quantity was merely the dividing point for the change in the price per lineal foot.

The paragraph designated "Unit Prices" clearly sets the prices to be charged defendant for completed work and uncompleted work. We agree with defendant and the trial court that the defendant was to pay plaintiff $1.25 per lineal foot for piling omitted under the Estimated Quantity and not that plaintiff was to pay defendant that figure through the means of a credit.

The decree and judgment of the trial court should be affirmed. It is so ordered.

ANDERSON, P. J., and JAMES D. CLEMENS, Special Judge, concur.