20811

CAROLINA WATER SERVICE, INC., Appellant, v. SOUTH CAROLINA PUBLIC SERVICE COMMISSION, Rudolph Mitchell, Abney A. Smith, Guy Butler, Fred A. Fuller, Jr., J. Lewis Moss, J. Henry Stuckey. Henry G. Yonce, and Kingfisher Inn, Inc., Respondents.

(248 S.E. (2d) 924)

*George S. King, Jr., of Boyd, Knowlton, Tate & Finley,* Columbia, *for appellant.*

*James P. Stevens, Jr., of Stevens, Stevens & Thomas,* Loris, *for respondent Kingfisher Inn, Inc.*

*Robert T. Bockman* and *William E. Booth, III,* Columbia, *for respondent S. C. Public Service Comm.*

November 16, 1978.

GREGORY, Justice:

Thie appeal by Carolina Water Service, Inc. [Carolina] is from the order of the lower court dismissing Carolina's appeal from orders of the Public Service Commission of South Carolina [Commission] and awarding judgment to respondent Kingfisher Inn, Inc. [Kingfisher]. We hold the Commission failed to comply with Section 58-5-290, 1976 Code of Laws of South Carolina, and revese and remand.

Carolina owns and operates a water and sewer utility company in Garden City. In March 1974 Kingfisher contacted Carolina regarding water service for a motel to be constructed in Garden City. Carolina and Kingfisher agreed that Kingfisher would pay Carolina the sum of Thirteen Thousand Seven Hundred Fifty ($13,750.00) Dollars for the initiation of water service to the new motel.

Carolina then installed a new water main from its well to Kingfisher's location and connected Kingfisher to the new water main. Kingfisher initially refused Carolina's demand for payment but ultimately paid the entire Thirteen Thousand Seven Hundred Fifty ($13,750.00) Dollars under protest. Thereafter Kingfisher filed a petition with the Commission under Section 58-5-270, 1976 Code, to have the Commission determine the reasonableness of the rate charged for the initiation of water service.

On September 29, 1975 the Commission filed its Order No. 18,692 in this matter. The order provides in part as follows:

. . . [I]f it is determined by and between the parties, or by the courts, that it was Carolina's intent, and Kingfisher's agreement, to charge a "tap" fee,[1] or a "connection" fee, as

---

[1] Commission Rule 103-702(14): Tap Fee. A non-recurring, non-refundable charge related to the cost of installing the utility's service line from the main to the customer's premises. Any privately-owned corporations, firm, partnership, or individual empowered by contract, or otherwise, to collect a tap fee from a customer for the provision of

that term is defined in this Order, then Carolina would be obligated to return to Kingfisher the entire advancement, save $250 representing an approved "tap fee." [2] However, if it is found that Carolina intended and Kingfisher agreed, that the charge of $13,750.00 was to be utilized as a contribution in aid of construction,[3] then Carolina would be obligated to refund to Kingfisher that portion of the charge which exceeds $10,420.73, and further, Carolina would provide a formula, mutually agreeable to staff and Kingfisher, whereby it would eventually refund all or any acceptable portion of the $10,420.73 to Kingfisher over a period of five to ten years.

The Commisson's order leaves unresolved the question of whether the rate charged by Carolina for the initiation of water service to Kingfisher was a tap fee or a customer contribution in aid of construction. The Commission's order provides, however, what result would follow in either event. If the rate was a tap fee, the Commission's order would require Carolina to return the entire Thirteen Thousand Seven Hundred Fifty ($13,750.00) Dollars, less Two Hundred Fifty ($250.00) Dollars, representing a reasonable tap fee. If, on the other hand, the rate was a customer contribution in aid of construction, the Commission's order would require Carolina to return the entire fee less Ten Thousand Four Hundred Twenty and 73/100 ($10,420.73) Dollars, representing the reasonable cost of extending the water main from Carolina's well to Kingfisher.

Carolina's petition for a rehearing was denied by the Commission on November 5, 1975.

water service to that customer shall be considered a utility and shall obtain Commission approval prior to collecting tap fees, or any other rates for water service. An application for approval of any tap fee shall not be considered unless the filing contains appropriate exhibits setting forth all cost criteria justifying the tap fee requested.

[2] Carolina had obtained Commission approval for a uniform tap fee of $250 for all residential family units.

[3] Commission Rule 103-702(15): Customer Contribution in Aid of Construction. A fee paid by a customer under a contract entered into by and between the utility and its customers providing terms for the extension of the utility's mains to serve the customer.

Subsequently on December 5, 1975 Carolina commenced an action in the Richland County Court of Common Pleas under Section 58-5-340, 1976 Code, to have the Commission's orders set aside.

By its order dated August 23, 1977 the lower court found in part as follows:

The Commission's Order No. 18,692 left a question of fact open for determination by the parties or by this Court, i. e., whether the amount charged by Carolina was intended as a "tap fee" or "connection fee" or a "contribution in aid of construction" . . . .

. . . . .

. . . I find that it was the parties' intent that the charge was a tap fee.

. . . . .

It is, therefore, ORDERED, ADJUDGED AND DE-CREED:

2. That the defendant, Kingfisher Inn, Inc., have judgment against the plaintiff, Carolina Water Services, Inc., in the amount of Thirteen Thousand Five Hundred ($13,-500.00) Dollars, . . .

This appeal by Carolina followed.

When a petition is filed with the Commission under Section 58-5-270 to determine the reasonableness of a rate charged by a public utility, the Commission is required by Section 58-5-290 to make certain findings and determinations. Section 58-5-290 provides:

Whenever the Commission shall find, after hearing, that the rates, fares, tolls, rentals, charges or classifications or any of them, however or whensoever they shall have theretofore been fixed or established, demanded, observed, charged or collected by any public utility for any service, product or commodity, or that the rules, regulations or practices, or any of them, affecting such rates, fares, tolls, rentals, charges or

classifications, or any of them, are unjust, unreasonable, noncompensatory, inadequate, discriminatory or preferential or in any wise in violation of any provision of law, the Commission shall, subject to review by the courts, as herein provided, determine the just and reasonable fares, tolls, rentals, charges or classifications, rules, regulations or practices to be thereafter observed and enforced and shall fix them by order as herein provided.

The Commission is required by Section 58-5-290 to do three things: (1) to determine whether a rate charged by a public utility for a particular service is unreasonable; (2) to determine the reasonable rate for that service; and (3) to fix the reasonable rate for that service by order.

> The duty to fix a reasonable rate for a service performed by a public utility rests solely with the Commission, and neither this Court nor the circuit court can assume this responsibility. *Southern Bell Telephone and Telegraph Company v. Public Service Commission,* S. C., 244 S. E. (2d) 278 (1978). The duties placed upon the Commission by Section 58-5-290 cannot be delegated by the Commission to the courts.

Here, the Commission refused to determine whether the rate charged by Carolina was a tap fee or a customer contribution in aid of construction, and thus failed to fix by order the reasonable rate Carolina may charge for the initiation of water service to Kingfisher.

The Commission's refusal to make this determination was based on its finding that the question was governed by the contractual agreement between the parties. The Commission found that the intent of Carolina and Kingfisher was controlling as to whether the rate charged by Carolina was a tap fee or a customer contribution in aid of construction, and that the intent of the parties could be determined only "by settlement between the parties, or by a decision of the courts."

The Commission attempted to justify its failure to comply with Section 58-5-290 by citing *Katz Drug Company v. Kansas City Power and Light Co.,* 303 S. W. (2d) 672 (Mo. App. 1957) for the proposition of law that "since the commission is not a court, it 'has neither the power to construe contracts nor to enforce them.' "

While it is true the Commission is not a court and does not sit to enforce contractual rights, it is equally true the Commission exercises quasi-judicial powers in the fulfillment of its responsibility under Section 58-5-290 as the arbiter of the reasonableness of rates charged by public utilities. As we stated in *Beard-Laney, Inc. v. Darby,* 213 S. C. 380, 49 S. E. (2d) 564 (1948) :

Even a governmental body of admittedly limited powers is not in a strait jacket in the administration of the laws under which it operates. Those laws delimit the *field* which the regulations may cover. They may imply or express restricting limitatons of public policy. And of course they may contain express prohibitions. But in the absence of such limiting factors it is not to be doubted that such a body possesses not merely the powers which in terms are conferred upon it, but also such powers as must be inferred or implied in order to enable the agency to effectively exercise the express powers admittedly possessed by it. 49 S. E. (2d) at 567.

In order to effectively comply with Section 58-5-290 the Commission must, of necessity, possess the requisite authority to determine whether Carolina and Kingfisher intended the disputed charge to be a tap fee or a customer contribution in aid of construction.

The Commission's failure to comply with Section 58-5-290 by fixing the reasonable rate Carolina may charge for the initation of water service to Kingfisher precludes any meaningful judicial review of the Commission's order.

In *State Board of Medical Examiners v. Gandy*, 248 S. C. 300, 149 S. E. (2d) 644 (1966) we considered an appeal from an order of the lower court affirming the action of the State Board of Medical Examiners in revoking Gandy's license to practice medicine in this State. We held in *Gandy, supra,* that because the Medical Board's findings of fact were so inadequate as to make it impossible to properly review the issues raised by the appeal, the case should be remanded to the lower court with directions to send it back to the Medical Board for additional findings of fact. In *Gandy,* as here, the sufficiency of the Medical Boards findings had not been challenged in the lower court and was not raised before this Court on appeal by way of exception. The procedure followed in *Gandy* is appropriate to the case at hand.

Accordingly, judgment is reversed and the case remanded to the lower court for the purpose of entering an appropriate order sending it back to the Commission for further proceedings consistent with this opinion.

Reversed and remanded.

LEWIS, C. J., and LITTLEJOHN, NESS and RHODES, JJ., concur.